947 A.2d 598

**Pazir MOHAMMAD**

v.

**TOYOTA MOTOR SALES, U.S.A., INC. et al.**

**No. 0183, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 8, 2008.

694

Anthony T. Bartlett (Mister, Winter & Bartlett, LLC on the brief), Timonium, for appellant.

Joel A. Dewey (DLA Piper US LLP on the brief), Baltimore (Michael J. Budow, Anne K. Howard, Budow and Noble PC on the brief), Bethesda, for appellee.

Argued before SALMON, JAMES R. EYLER and RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

THIEME, J.

This products liability action arises out of a single vehicle accident that occurred on the Dulles access road in Fairfax, Virginia on February 15, 2003. This matter is before us on appeal by plaintiff Pazir Mohammad from the entry of summary judgment in favor of defendants Toyota Motor Sales USA ("Toyota"), Darcars of Cherry Hill, Inc., and Aseer Mohammad. The defendants are the manufacturer, retail dealer, and the owner of the 2003 Toyota Tundra truck that was involved in the accident. Appellant was the driver of the Tundra at the time of the accident, and was seriously injured as a result. A passenger lost his life.

On appeal, appellant contends that the circuit court erred in granting summary judgment. The key to this appeal is whether the absence of an expert as to the presence of a defect or causation corrodes appellant's case. The circuit court ruled that it did, and, under the circumstances found here, we affirm the entry of summary judgment as to all defendants in all respects for the reasons that follow.

BACKGROUND

## A. Facts

The indispensable facts, viewed in the light most favorable to the appellant, are these. Appellee, Aseer Mohammad ("Aseer"), is the appellant's brother and the Tundra's owner. On December 4, 2002, Aseer, accompanied by appellant, purchased a new 2003 Toyota Tundra pickup truck from Darcars of Cherry Hill Road, Inc. He allowed only appellant to drive the Tundra.

On December 27, 2002, appellant took the Tundra to the Darcars service department, complaining that the truck seemed to pull to the left. After an inspection, Darcars's mechanics told appellant that they found no mechanical, structural, or other defects with the Tundra and instead attributed the phenomenon to uneven tire pressure. Appellant took the truck, and later called Darcars back to complain that the problem continued. Although Darcars said that it would arrange to have a Toyota engineer or field representative call him to schedule another inspection of the truck, appellant claims that no one from Darcars contacted him again. Appellant continued to drive the Tundra because the dealer assured him that the truck had no mechanical, structural, or other defect.

On February 15, 2003, appellant, who owned a construction company, drove the Tundra to a job site in Silver Spring. His brother Aseer and another brother accompanied him. A friend, Mr. Khalid Mahmoud, came to the job site and asked for a ride to Dulles International Airport to see a relative. Appellant and he then left for the airport, and stayed there a short time. At about 3:50 p.m., they were returning to Maryland, had just left the parking lot at the Dulles International Airport, and were pulling away from a toll booth heading eastbound on the access road when the Tundra began to accelerate without warning. The accelerator appeared to be stuck, and when appellant pushed, the accelerator went "all the way down." Appellant checked to make sure the cruise control had not engaged, opened his side window, and waved

his arm to alert drivers in front of him to get out of the way. After four miles of travel, appellant applied the brakes and heard a breaking sound coming from the engine compartment. The Tundra veered to the left, crossed the median strip, hit a Jersey barrier, and rolled on its side. Appellant was severely injured, and Mr. Mahmoud was killed.

The summary judgment record includes these additional facts. In August 2005, Toyota issued a "Safety Recall Notice"—SSC 50J. The notice represented that "Toyota has decided that a defect, which relates to motor vehicle safety, exists in the Front Suspension Lower Ball Joint of certain 2002 through early 2004 Tundra and Sequoia vehicles."

■ Appellant deposed three Toyota experts-Steven Fenton, P.E., Robert M. Landis, and Donald F. Tandy, Jr.[1] Landis

---

**1.** On appeal and in his brief before the circuit court appellant claims that the opinions of Fenton and Landis should not be considered because they "have not been accepted by this court as an expert witness in any field [and n]o evidentiary foundation has been laid to allow the admissibility of their opinions." This point has not been adequately briefed or argued, and was not presented in oral argument before the circuit court. *See Rohrbeck v. Rohrbeck*, 318 Md. 28, 38 n. 4, 566 A.2d 767 (1989) (Court does not address issue not adequately briefed or argued); *Beck v. Mangels*, 100 Md.App. 144, 149, 640 A.2d 236 (1994) (same), *cert. dismissed as improvidently granted*, 337 Md. 580, 655 A.2d 370 (1995). The circuit court did not rely on these opinions in granting summary judgment. Further, any concerns about their qualifications could easily have been addressed by appellant's counsel when he deposed each witness by requesting a *curriculum vitae* or conducting a brief *voir dire*. *See* Md. Rule 2–415(g) (stating in part that "objection to the competency of a witness ... is not waived by failure to make it before or during a deposition *unless the ground of the objection is one that might have been obviated ... if presented at that time.*") (emphasis added).

Given the procedural posture of appellant's claim, and noting that the employment of Toyota's experts does not influence our decision, we decline to rule on the issue of whether Landis or Fenton were qualified as experts. Moreover, appellant does not challenge the qualifications of Donald Tandy or the basis of his opinions. Any complaint about Tandy's testimony has been waived. *See Swann v. Prudential Ins. Co. of America*, 95 Md.App. 365, 384, 620 A.2d 989 (1993), *rev'd on other grounds sub nom. Dover Elevator Co. v. Swann*, 334 Md. 231, 638 A.2d 762 (1994).

In any event, there is evidence that is relevant to Landis's qualifications and the foundations for his opinions. When questioned by appel-

inspected the Tundra and testified that the "left side ball joint ... on this vehicle is still intact, feels good, works properly and is not a separated ball joint, which is the phenomenon associated with the recall.... [T]he ball joint is in excellent shape." Landis opined that the steering components did not break until after the truck hit the Jersey barrier or when it rolled over:

Q. Did you notice whether any portions of the steering or suspension system on the left side were no longer in working order?

A. Yes. The steering knuckle on the left side is bolted to the housing that the ball joint is in. There's four bolts that hold it and those four bolts were sheared in the impact.

\* \* \*

And there has been some distortion to all the pieces in the suspension on the left side I would say as a result of impact.

\* \* \*

... [T]hey're broken, they had tensile failure.

\* \* \*

Q. Do you have an opinion as to how the bolts broke or what caused the bolts to break?

A. I have a preliminary opinion. I would want to see the reconstruction to have a complete opinion, but the bolts could have broke as a result of the impact with the median or they could have broke as a result of the rollover.

---

lant's counsel, Landis testified that he is employed by Toyota as a "technical analysis manager for the technical analysis group within Toyota," that he "utilize[s his] engineering education and experience to analyze our vehicles in the field," that he was a "senior engineer in the quality assurance group ... responsible for chassis issues." He said that he reviewed vehicle documents for this specific Tundra and inspected the vehicle.

\* \* \*

... [T]he vehicle came to rest, then the bolts broke.

Toyota expert Donald Tandy testified that the "physical evidence is consistent with both ball joints performing properly."

## B. Procedural Background

On February 10, 2006, appellant filed this products liability action seeking damages from seven corporate defendants under theories of strict liability, negligence, breach of the implied warranties of merchantability and fitness for a particular purpose, and breach of express warranty. He also alleged that his brother, Aseer Mohammad, as the owner and bailor of the Tundra, was negligent by "failing to inspect and maintain" the Tundra and by otherwise permitting appellant to drive a vehicle that was defective and unsafe. After certain defendants were dismissed on July 31, 2006, this case proceeded against Toyota, Darcars, and Aseer Mohammad.

On May 12, 2006, the trial court issued a "Scheduling and Pretrial Order." *See* Md. Rule 2–504.[2] This Order required, *inter alia*, that the parties disclose their experts by July 26, 2006. An Amended Scheduling Order reset this due date to September 15, 2006. Appellant did not identify any expert who would address the issue of liability or the presence of a manufacturing or design defect, and did not submit any expert report or opinion with respect to these issues. Discovery closed without any designation by appellant of a liability or defect expert.

On January 16, 2007, each defendant filed a motion for summary judgment. The circuit court held a hearing on these motions on March 7, 2007. Ruling from the bench after hearing argument, the circuit court entered judgment in favor

---

2. At the time of the pre-trial stage of this litigation, Md. Rule 2–504(b)(1)(B) required that the scheduling order contain "one or more dates by which each party shall identify each person whom the party expects to call as an expert witness at trial, including all information specified in Rule 2–402(f)(1)[.]"

of the defendants on all counts. The court held that, without expert opinion or testimony with respect to the existence of a defect, there was insufficient evidence to go to the jury on the strict liability, negligence, and implied warranty counts. As to the breach of express warranty count, the court entered summary judgment because there was no allegation of an actionable express statement.[3] The common thread in the circuit court's analysis of the strict liability, negligence, and implied warranty counts was appellant's failure to identify an expert witness who by testimony or report would offer an opinion with respect to a design or manufacturing defect an d the role such defect would have played in causing the accident and resulting injuries. The court noted that "proof of a defect must rise above, surmise, conjecture, or speculation. And there is no right to recovery based on any presumption from the mere happening of an accident." This timely appeal followed.

## DISCUSSION

### A. Introduction: Choice of Law

The accident took place in the Commonwealth of Virginia. Maryland, unlike most other States, continues to adhere to the *lex loci delicti* principle set forth in the RESTATE-MENT, CONFLICT OF LAWS §§ 378–390. *Laboratory Corporation of America v. Hood,* 395 Md. 608, 615, 911 A.2d 841 (2006). *See Farwell v. Un,* 902 F.2d 282, 286 (4th Cir.1990). *See also Carter v. United States,* 333 F.3d 791, 794 (7th Cir.2003) ("Maryland ... adheres to the old-fashioned conflicts principle of *'lex loci delicti.'* "), *cert. denied,* 540 U.S. 1111, 124 S.Ct. 1078, 157 L.Ed.2d 899 (2004). Thus, "where the events giving rise to a tort action occur in more than one State, we apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Laboratory Corporation of*

---

3. The court explained that "[t]here is no allegation in that count as to what was even said. I don't know whether they said the quality was poor or the quality was great. Obviously, I assume that they said it was a high quality vehicle."

*America v. Hood,* 395 Md. at 615, 911 A.2d 841 (citing cases). But while substantive law of Virginia would be applied, "its application to the facts presented in the forum court is to be determined in accordance with the rules of evidence, inference and judgment of the forum State."[4] *Id.* at 616, 911 A.2d 841. Accordingly, "Maryland law ... controls as to the inferences to be drawn from the evidence, the sufficiency of the evidence, the inferences from it to go to the jury and other procedural matters." *Vernon v. Aubinoe,* 259 Md. 159, 162, 269 A.2d 620 (1970).

## B. Summary Judgment

At issue is the propriety of the circuit court's entry of summary judgment in favor of TMS, Darcars and Pazir Mohammad. Pursuant to Maryland Rule 2–501(a), "[a]ny party may file at anytime a motion for summary judgment ... on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Rule 2–501(f) provides that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The role of summary judgment is to " 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita Electric Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

In deciding a motion for summary judgment, the circuit court does not resolve disputed issues of fact but "makes rulings as a matter of law[.]" *Beatty v. Trailmaster Products,*

---

4. Maryland law would govern the breach of warranty claims, because the corporate defendants' liability would be predicated on the sale of the Tundra, which occurred in Maryland. *See Frericks v. General Motors Corp.,* 278 Md. 304, 307, 363 A.2d 460 (1976) (citing *Volkswagen of America v. Young,* 272 Md. 201, 220, 321 A.2d 737 (1974)).

*Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). *See Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294, 936 A.2d 343 (2007). Because

> this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and [appellant's] version of events (unsurprisingly) differs substantially from [appellees'] version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." [5]

*Scott v. Harris*, 550 U.S. ——, ——, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam)). *See Jones v. Mid–Atlantic Funding Co.*, 362 Md. 661, 676, 766 A.2d 617 (2001) (reciting standard).

---

5. For example, there is a dispute as to the road conditions. The "accident description" in the police accident report stated that appellant "lost control of the vehicle during a snow storm. He crossed the median and was airborne. He landed on all four wheels then hit the jersey wall and then rolled the vehicle." Two police officers who investigated the accident, Corporals Gary Gross and Chris Smeal, respectively testified that it was snowing and that there was "slush on the roads[,]" that "[t]here were some icy patches and there was snow in the median strip and on the sides of the road." The accident report form also indicated that it was snowing, the "surface condition" of the roadway was "icy," the pavement was "slick," and that there had been "rain, snow, etc. on the windshield." Mr. Mahmoud's brother testified that appellant told him that he had his arm out of the window to clear snow from the windshield. These facts are contradicted by appellant, who testified that there was no snow or ice on the road and that he was not clearing his windshield. These different versions about the road conditions, whether snow or ice had accumulated on the windshield, or even the estimated speed of the Tundra, while "genuine" issues, are not, at this juncture, "material" to the resolution of the motions for summary judgment.

 Toyota expert Steven Fenton testified that, had the accelerator stuck and given the distance of 4.3 miles between the toll booth and the site of the accident, the Tundra would have reached a speed well over 100 mph by the time it crashed. He concluded instead that the Tundra was going about 55 mph when the accident happened. At this juncture, we must accept as true appellant's version of events, *viz.* that the gas pedal stuck, although appellant does not claim that the truck was speeding when the accident took place.

We evaluate the facts and pleadings employing the same standard as does the circuit court, and will not defer to that court's conclusions of law. Because we must determine whether the circuit court was legally correct, our review over a circuit court's decision on summary judgment, therefore, is plenary. *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship,* 375 Md. 522, 533, 826 A.2d 443 (2003); *Carter v. Aramark Sports and Entertainment Services, Inc.,* 153 Md.App. 210, 224, 835 A.2d 262 (2003), *cert. denied,* 380 Md. 231, 844 A.2d 427 (2004).

Our threshold task is to determine whether there is any genuine issue of material fact. *Dashiell v. Meeks,* 396 Md. 149, 163, 913 A.2d 10 (2006). *See Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 534, 836 A.2d 655 (2003) (citations omitted). The "moving party must set forth sufficient grounds for summary judgment," *Davis v. Goodman,* 117 Md.App. 378, 392, 700 A.2d 798 (1997), and the movant is responsible for informing the circuit court of the basis for its motion and for identifying deficiencies in the pleadings and record which demonstrate the absence of a genuine issue of fact. *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 136, 623 A.2d 731 (1993) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The party opposing a motion for summary judgment must produce admissible evidence to show a genuine dispute of material fact, and offer more than " 'conclusory statements, conjecture, or speculation [which] will not defeat summary judgment.' " *Carter v. Aramark,* 153 Md.App. at 225, 835 A.2d 262 (citations omitted). Summary judgment is the " 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince the trier-of-fact to accept its version of events." *Schacht v. Wisconsin Department of Corrections,* 175 F.3d 497, 504 (7th Cir.1999), disapproved on other grounds, *Higgins v. Mississippi,* 217 F.3d 951 (7th Cir.2000). There "must be evidence upon which the jury could reasonably find for the plaintiff." *Crickenberger v. Hyundai Motor America,* 404 Md. 37, 45, 944 A.2d 1136 (2008). The Court of Appeals reminds us that undisputed material facts that are

susceptible of more than one inference should go to the jury. *See Hill v. Cross Country,* 402 Md. at 294, 936 A.2d 343 (citation omitted).

## C. Expert Testimony or Opinion

The theory of strict liability in tort is set forth in Section 402A of the RESTATEMENT (SECOND) OF TORTS (1965). The Court of Appeals adopted for Maryland the strict liability formula of Section 402A in *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955 (1976). Section 402A provides:

Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his [or her] property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his [or her] property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his [or her] product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Judge Bloom pointed out for this Court:

Basically, to recover in a strict liability case, a plaintiff need not prove any specific act of negligence; he must merely prove that the product was in a defective condition and unreasonably dangerous at the time it was sold. The defect may be one that occurred in the manufacturing process, in which case the product does not conform to the manufacturer's own standards, or it may be a defect in design, in which case what proves to be a defect was actually intended by the manufacturer. With respect to the former, the focus is on

the conduct of the manufacturer; with respect to the latter, the inquiry focuses on the product itself.

*Klein v. Sears, Roebuck & Co.,* 92 Md.App. 477, 484, 608 A.2d 1276, *cert. denied,* 328 Md. 447, 614 A.2d 973 (1992). Maryland "espoused the doctrine of strict liability in tort in order to relieve plaintiffs of the burden of proving specific acts of negligence by permitting negligence to be implied where plaintiffs can prove a product is defective and unreasonably dangerous when placed in the stream of commerce." *Nissen Corp. v. Miller,* 323 Md. 613, 624, 594 A.2d 564 (1991).

The Commercial Law Article respectively defines express warranty and the implied warranties of merchantability and fitness for a particular purpose:

**§ 2–313. Express warranties by affirmation, promise, description, sample.**

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

. . .

**§ 2–314. Implied warranty; merchantability; usage of trade.**

(1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . .

(2) Goods to b e merchantable must b e at least such as . . .

(c) Are fit for the ordinary purposes for which such goods are used; and . . .

**§ 2–315. Implied warranty; fitness for particular use; applicability to lease and bailment of goods.**

(1) Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless

excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose. . . . Maryland Code (1975, 2002 Repl.Vol.), §§ 2–313, 2–314 & 2–315 of the Commercial Law Article.

■ The plaintiff in a products liability action must establish three "product litigation basics"—" '(1) the existence of a defect; (2) the attribution of the defect to the seller; [and] (3) the causal relation between the defect and the injury.' " *Wood v. Toyota Motor Corporation,* 134 Md.App. 512, 517–18, 760 A.2d 315 (quoting *Jensen v. American Motors Corp.,* 50 Md.App. 226, 234, 437 A.2d 242 (1981)), *cert. denied,* 362 Md. 189, 763 A.2d 735 (2000). *See Crickenberger v. Hyundai Motor America,* 404 Md. at 49, 944 A.2d 1136. In *Ford v. General Accident Insurance Company,* 365 Md. 321, 779 A.2d 362 (2001), the court observed that although the themes of negligence, breach of warranty, and strict liability are distinct, they converge for " 'they all require proof that the product was defective when it left the hands of the manufacturer, and that the defective condition was the predicate cause of the injuries or damages of which the plaintiff complains.' " *Id.* at 335, 779 A.2d 362 (quoting Robert E. Powell & M. King Hall, Jr., *Proof of a Defect or Defectiveness,* 5 U. BALT. L.REV. 77 (1977) (citations omitted)). *See Lloyd v. General Motors,* 397 Md. 108, 134, 916 A.2d 257 (2007) (articulating elements for recovery under strict liability in tort); *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 591, 495 A.2d 348 (1985); *Virgil v. "Kash N' Karry" Service Corp.,* 61 Md.App. 23, 30, 484 A.2d 652 (1984), *cert. denied,* 302 Md. 681, 490 A.2d 719 (1985). *See also Robinson v. Brandtjen & Kluge, Inc.,* 500 F.3d 691, 697 (8th Cir.2007) (observing that "articulation of liability, whether based on a negligent breach of a duty of care or strict liability, reduces to the single question of whether the product was defective.") (citation omitted).

■ Appellant maintains that expert testimony was not required to establish a *prima facie* case under these liability theories. We disagree. Unquestionably, the presence of the design or manufacturing defect may be inferred in the appro-

priate case "without the necessity of weighing and balancing the various factors involved[.]" *Ford v. General Accident Insurance Company,* 365 Md. at 335 n. 14, 779 A.2d 362 (quoting *Phipps v. General Motors,* 278 Md. at 345–46, 363 A.2d 955). *See Eaton Corp. v. Wright,* 281 Md. 80, 89, 375 A.2d 1122 (1977). The accident in *Phipps* occurred when the accelerator of a fairly new car became "stuck without warning, causing the automobile to accelerate suddenly at a high rate of speed and leave the road." *Phipps v. General Motors,* 278 Md. at 339, 363 A.2d 955. The Court observed that

> there are those kinds of conditions which, whether caused by design or manufacture, can never be said to involve a reasonable risk. For example, the steering mechanism of a new automobile should not cause the car to swerve off the road ...; the drive shaft of a new automobile should not separate from the vehicle when it is driven in a normal manner ...; the brakes of a new automobile should not suddenly fail ...; and the accelerator of a new automobile should not stick without warning, causing the vehicle suddenly to accelerate.

*Phipps v. General Motors,* 278 Md. at 345–46, 363 A.2d 955 (citations omitted).

In *Babylon v. Scruton,* 215 Md. 299, 138 A.2d 375 (1958), the plaintiff, who was the superintendent of a contracting firm, fell to the ground when a concrete roof slab he was installing broke when he stepped on it. He filed suit against the manufacturer of the slab. The jury found for the plaintiff and the trial court denied the defendant's motion for a judgment *n.o.v.* The defendant complained that no expert had testified for the appellant as to whether the design of the slab was defective or unsafe. The Court of Appeals rejected this argument. The dispositive point was that the collapse of the concrete slab was a phenomenon within the general expertise and knowledge of ordinary reasonable jurors, and that an expert was unnecessary to illustrate this obvious point. The Court considered it to be a matter of common knowledge that concrete structures require steel reinforcement:

> "It is a matter of general knowledge that concrete is strong in resisting compression strains and weak in withstanding tensile strains. Places at which both strains may be expected, while susceptible of accurate mathematical ascertainment, are so well known that they are determined empirically by many engaged in the art.... Thus, metal which possesses tensile strength is placed at weak points in concrete where it is subjected to tensile strains."

*Babylon v. Scruton*, 215 Md. at 307, 138 A.2d 375 (quoting *Turner v. Lauter Piano Company*, 248 F. 930, 932–33 (3d Cir.1918)). Drawing on this "common knowledge," the Court concluded that "it was not essential to have expert testimony on what the jurors, as ordinary men, would be aware of, as a matter of general knowledge." *Babylon v. Scruton*, 215 Md. at 307, 138 A.2d 375. *See Virgil v. "Kash N' Karry" Service Corp.*, 61 Md.App. at 31, 484 A.2d 652 (citing general rule on need for expert witness in technical areas, but noting such evidence "hardly necessary to establish that a thermos bottle that explodes or implodes when coffee and milk are poured into it is defective.").

■ While in some instances the circumstances of an accident may provide sufficient evidence for a jury question in a products liability action,

> Maryland courts have adopted the general rule that expert testimony is required when the subject of the inference that a product is defective is particularly related to some science or profession that it is beyond the ken of the average layman.

*Jones v. Reichert Jung, Inc.*, 211 F.Supp.2d 661, 667 (D.Md. 2002) (citing *Wood v. Toyota Motor Corporation*, 134 Md.App. at 516–17, 760 A.2d 315). A case which illustrates when an expert opinion is required, and when it is not, is *Hartford Accident & Indemnity Co. v. Scarlett Harbor Assoc. Limited Partnership*, 109 Md.App. 217 (1996), aff'd, 346 Md. 122, 695 A.2d 153 (1997). In that case, the council of condominium unit owners sued the developer of the condominium and others alleging various defective design and construction defects.

The circuit court granted summary judgment against the plaintiff council on a host of issues. Some of the circuit court's rulings were based on the plaintiff's failure to present expert testimony regarding certain specific defects. We reprised the seasoned principle that

> "The general rule is well established that expert testimony is only required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman." ... Expert testimony is not required, however, on matters of which the jurors would be aware by virtue of common knowledge. In this case, the Council's claim relates to the proper design of the heating system for an elevator shaft. We do not believe that this is a matter within the knowledge of the average layperson; most jurors would not be sufficiently versed in engineering, physics, or construction to know whether or where to install heat pumps, whether the bottom of the elevator shaft was properly unenclosed, or how to prevent the elevator cab from forcing cold air into the upper portions of the building.... Based on the evidence that the Council offered, the trier of fact would be left only to speculate as to whether there was a "defect" in the construction or design of the elevator shaft. Accordingly, we conclude that the trial court did not err in requiring the Council to offer expert testimony.

*Hartford v. Scarlett Harbor,* 109 Md.App. at 257–58, 674 A.2d 106 (citations omitted).

Expert testimony would also be required to inform the jury on "[h]ow to grade a paved area" so as to assist the venire in its determination of whether ponding of water in the condominium lobby was due to a defect in design or construction. *Id.* But we did agree with the plaintiff that expert opinion would be unnecessary to show the jury that something had to be amiss when a unit owner suffered under a constant storm of undue noise and vibration:

> Many lay persons have lived in apartments or stayed in hotel or motel rooms, and they would know that "constant"

loud noise and vibrations from mechanical devices is out of the ordinary. As a matter of common knowledge, the kind of noise and vibration that results in "irrepressible annoyance," "interrupt[s] . . . sleep," and renders a room "uninhabitable," raises at least an inference of defective construction or design. . . . We conclude that the affidavit was sufficient to raise a triable issue, and that expert testimony was not necessary.

*Hartford v. Scarlett Harbor*, 109 Md.App. at 259–60, 674 A.2d 106 (citations omitted). In *Wood v. Toyota Motor Corporation*, the driver sued Toyota claiming that the air bag on her Toyota Tercel had been defectively designed. The circuit court granted Toyota's motion *in limine* to exclude the testimony of the plaintiff's expert, and later entered summary judgment in favor of Toyota, ruling that expert testimony was required for plaintiff to make her case. This Court agreed. Judge Joseph F. Murphy, Jr., at the time Chief Judge of this Court, iterated that "expert testimony is required 'when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman.'" *Wood v. Toyota*, 134 Md.App. at 518, 760 A.2d 315 (citations omitted). Citing *Babylon v. Scruton*, we recognized that "[e]xpert testimony is not required . . . on matters of which the jurors would be aware by virtue of common knowledge[.]" Nevertheless, the issue in *Wood*, the defective design or manufacture of an air bag, was not a matter of ordinary knowledge, and this Court held that "the products liability plaintiff who claims to have been injured due to the defective design of an air bag must present expert testimony to generate a jury issue on whether the air bag was defective." *Wood v. Toyota*, 134 Md.App. at 518, 760 A.2d 315. We rejected in *Wood* the argument that *res ipsa loquitur* would apply:

Appellant argued in the alternative that, because the doctrine of res ipsa loquitur applies to this case, expert testimony is not required. Judge Hotten rejected that argument. So do we.

Successful reliance upon the doctrine of res ipsa loquitur requires proof of each of the following: first, a causality

of a sort that usually does not occur in the absence of negligence; second, caused by an instrumentality within the defendant's exclusive control; and finally, circumstances indicating that the casualty did not result from the act or omission of the plaintiff.

*Bell v. Heitkamp, Inc.*, 126 Md.App. 211, 227, 728 A.2d 743 (1999). "Proof of a defect [in a products liability case] must rise above surmise, conjecture or speculation, *Woolley v. Uebelhor*, 239 Md. 318, 325, 211 A.2d 302 (1965); and one's right to recovery may not rest on any presumption from the happening of an accident. *Brehm v. Lorenz*, 206 Md. 500, 112 A.2d 475 (1955). Res ipsa loquitur does not apply." *Jensen [v. American Motors Corp.*, 50 Md.App. 226, 232, 437 A.2d 242 (1981)]. *See also Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md.App. 41, 549 A.2d 385 (1988).

*Id.* at 518 n. 6, 760 A.2d 315.

We believe that the case of *Jensen v. American Motors Corp.*, 50 Md.App. 226, 437 A.2d 242 (1981), is on point. As in the case *sub judice, Jensen* involved a single vehicle accident that resulted in the death of the passenger and injury to the driver. The driver was traveling in a 1976 Custom Jeep along Maryland Route 213 when the Jeep "swerved to the left a couple of times[.]" The driver stopped a couple of times to investigate, but detected nothing wrong with the vehicle. The weather was clear, the road was dry, and the Jeep proceeded at about 55 miles per hour. Just before the accident, the driver "hear[d] the tires squealing. It sounded like it came from the left side." The driver attempted without success to control the Jeep, and the vehicle rolled over three or four times, resulting in the injuries noted above. *Id.* at 228, 437 A.2d 242.

The wrecked Jeep was taken to the owners property, where it remained for at least six months. Two months after the accident, the owners received a recall notice from American Motors Sales Corporation which provided that "[o]n some of the subject vehicles the bolts that secure the steering gear and

bracket to the frame may lose their torque." No one inspected the Jeep on behalf of the plaintiffs. The defendant's "inspectors" represented that they "found no defect in steering gear or running gear of this vehicle to cause loss of control of the vehicle[,]" although they detected "some play and a noise in the steering gear which they attributed to the accident." *Id.* at 229, 437 A.2d 242. We affirmed.

The victims' mother, individually and acting as the personal representative and next friend of the injured minor survivor, sued the owners of the Jeep and American Motors on theories of strict liability, negligence and breach of warranty. The defendants filed motions for summary judgment, which were granted by the circuit court. The plaintiffs appealed, and at the outset declared in their opening brief that they "do not have direct evidence per se of any specific defective part in the steering mechanism ... [and] rely upon the circumstantial evidence presented above which logically leads to the conclusion that the steering mechanism was defective." *Id.*

Judge Moore began the dissection for this Court by observing that " '[t]he bare fact that an accident happens to a product ... is usually not sufficient proof that it was in any way defective.... On the other hand, the addition of very little more in the way of other facts, ... may be enough to support the inference....' " *Jensen v. American Motors Corp.,* 50 Md.App. at 229, 437 A.2d 242 (quoting W.L. Prosser, *The Fall of the Citadel,* 50 Minn. L.Rev. 791, 840–44 (1966)). In affirming the circuit court's entry of summary judgment, we were unpersuaded by the plaintiffs' argument that there was a reasonably permissible inference from the facts shown that the Jeep was defective. The absence of expert testimony to support the plaintiffs' case in *Jensen* undermined their case. Judge Moore concluded:

> In this case there is a complete absence of essential facts from which an inference of a defect may reasonably be drawn. The driver, Samuel Teate, heard a squeal in the tires and lost control. There was no testimony that the steering mechanism locked or failed nor that the vehicle behaved erratically. No one on behalf of the appellants

made any determination as to whether there was any loose-ness in the bolts that secured the steering gear to the frame, despite the fact that the damaged vehicle was available to the appellants for such inspection over an extended period o f time; and this was not a situation where the vehicle was so damaged that discovery of a defect was impossible.... There is nothing here to show the slightest connection between the squealing of tires and the alleged defect in the vehicle's steering mechanism.

\* \* \*

Regardless of the recovery theory, the plaintiff in product litigation must satisfy three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury.... Appellants here have satisfied none of the above. They have been unable to show that what might possibly have happened did probably happen. Reduced to its simplest form, their argument is that because a one-car accident happened without apparent cause, the manufacturer must be to blame. Such a theory is not supported by established principles of common-law negligence or strict liability or breach of warranty....

We conclude that, on the record *sub judice,* in the absence of expert testimony, a reasonable jury would not be able to determine either the existence of a defect or causation without engaging in speculation. *See Crickenberger v. Hyundai Motor America,* 404 Md. at 54, 944 A.2d 1136.

Cases cited by appellant are unpersuasive. In *Stewart v. Budget Rent–a–Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970), a leading Hawaii decision on automobile products liability, the Supreme Court of Hawaii adopted a test that essentially follows the rule of strict liability in tort as set forth in Section 402A of the RESTATEMENT (SECOND) OF TORTS. *Stewart,* 470 P.2d at 243. The plaintiff in that case was injured when her rental car ran off the road. The trial court granted a directed verdict in favor of the manufacturer and the car's distributor,

but the jury returned a plaintiff's verdict against the rental agency. The rental agency appealed, claiming that there was insufficient evidence of a defect or causation. The agency also challenged the trial court's dismissal of its cross-claim against the distributor and manufacturer. The Hawaii Supreme Court vacated the dismissal of the cross-claim and remanded for a trial on the question of the manufacturer's and distributor's liability. The court otherwise affirmed the award in favor of the plaintiff driver.

A decisive evidentiary issue in *Stewart* was whether expert opinion evidence was required. The court articulated the problem and its solution as follows:

The nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies. The most convincing evidence is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection. If an accident sufficiently destroys the product, or the crucial parts, then an expert's opinion on the probabilities that a defect caused the accident would be helpful. If no such opinion is possible, as in the present case, the user's testimony on what happened is another method of proving that the product was defective. If the user is unable to testify, as where the accident killed him or incapacitated him, no other witness was present at the time of the accident, and the product was destroyed, the fact of the accident and the probabilities are all that remain for the party seeking recovery. At this point the plaintiff can attempt to negate the user as the cause and further negate other causes not attributable to the defendant. These kinds of proof introduced alone or cumulatively are evidence which help establish the presence of a defect as the cause of the damage.

Of course whether the proof is of the sufficient quantum to get past a motion for a directed verdict and to the jury will depend on each case. In most products liability cases the proof of a defect is usually shown by an expert witness or by the user's testimony as substantiated by an additional eye

witness. Yet where there is no additional eye witness, as in the present case, and where the only expert was unable to form an opinion because of the damaged condition of the car and the subsequent changes in the car's condition, we nevertheless do not think that a directed verdict against the plaintiff is always justified as a matter of law.

\* \* \*

Circumstantial evidence is certainly admissible to establish a defect and the fact that it caused the accident.... The question whether a directed verdict is proper turns on the court's judgment whether the inferences drawn from the circumstantial evidence measure up to the standard for a directed verdict. We think the testimony of the plaintiff, Mrs. Stewart, concerning the events immediately preceding the accident was sufficient to yield an inference that there was a defective condition which caused the accident.... Added to this was other testimony by Mrs. Stewart that tended to negate any causation not attributable to the rental agency, the distributor or the manufacturer. The car had not been taken on bumpy roads after the plaintiff rented it. It was a clear day and she drove on a straight and level highway at the time of the accident. Furthermore, there was also testimony concerning the damage to the front end of the car although such damage may well have been caused by the accident rather than causing it. Taken as a whole we think the quantum of evidence in this case was sufficient to go to the jury, fully recognizing that except for the evidence concerning the broken parts it was circumstantial and offered by the user.

*Stewart v. Budget Rent–a–Car Corp.*, 470 P.2d at 243–44 (footnotes and citations omitted).

In *Bollmeier v. Ford Motor Company*, 130 Ill.App.2d 844, 265 N.E.2d 212 (1970), the plaintiff's minor son was injured when the Ford Thunderbird he was driving ran off the road. He said that the car did not respond when he tried to steer the vehicle around a curve. The car had been delivered in April, 1966, roughly three months before the accident. From

that point, the Bollmeiers "observed a vibration which could be seen and felt in the steering column and the steering wheel." They heard a "humming noise" described as "similar to a swarm of bees or the sound of snow tires." *Bollmeier*, 265 N.E.2d at 213. The car had about 342 miles on the odometer when Mr. Bollmeier took it back to the dealer. The salesman recognized that there was a problem, and measures were taken to fix the vibration problems. At the time of the accident, the car had about 4400 miles. *Bollmeier*, 265 N.E.2d at 213–14.

Plaintiff filed an action in strict liability. The trial court granted the defendants' motions for directed verdicts at the close of the evidence, and the plaintiff appealed. On appeal, the Appellate Court of Illinois affirmed the directed verdict on the negligence count, but reversed that disposition on the strict liability/warranty counts. The trial court had ruled that the plaintiffs were required to prove a specific defect, and that they had failed to prove a defect in the steering mechanism or automobile that caused the injuries. The Illinois intermediate appellate court recited the pertinent issue to be "whether in a suit for breach of implied warranty or strict tort liability it is necessary to prove the specific defect in the product which caused the injury either by direct or circumstantial evidence." *Bollmeier v. Ford Motor Company*, 265 N.E.2d at 215.

The court noted that, in formulating the requirements for a products liability case, the Illinois Supreme Court had not indicated "that proof of the specific defect which causes the product to be in an unreasonably dangerous condition is necessary." *Id.* at 215–16 (citing *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182, 188 (1965)). Drawing on cases in which circumstantial evidence has been sufficient, the *Bollmeier* court said:

> Therefore, direct or circumstantial evidence which tends to prove that the product failed to perform in the manner reasonably to be expected in the light of its nature and intended function, such as proof of a malfunction which

tends to exclude other extrinsic causes, is sufficient to make out a prima facie case on this issue.

*Id.* at 217 (citations omitted). The court also observed:

In the present case there was substantial evidence that there was some malfunction in the car which manifested itself in a vibration in the steering. There was also expert testimony that this vibration could cause a metal failure or loosening of bolts which could occur in a steering mechanism. Although there was no prior complaint about the steering in the car as to its responsiveness, there was evidence by the driver that the car failed to respond when he attempted to negotiate a curve to the left. We believe that from the evidence submitted up to this point in the case, the jury could have properly concluded that the automobile failed to perform in the manner that would reasonably have been expected and that this failure caused the plaintiff's injury. The fact that someone turned the steering and the wheels responded when the car was hoisted from the ground is not conclusive on the issue of a defective condition, but was some evidence which could have been considered by the jury.

*Bollmeier v. Ford Motor Company*, 265 N.E.2d at 217–18.

We have reviewed these decisions and consider them unpersuasive. Although the court in *Stewart* concluded that the plaintiff's testimony "concerning the events immediately preceding the accident was sufficient to yield an inference that there was a defective condition which caused the accident[,]" the court also observed in a footnote that "[i]n the most extreme circumstances a court might hold that where no specific defect can be shown, recovery is to be allowed anyway as a carefully driven vehicle does not leave the road in the absence of a defect in the car." *Stewart v. Budget Rent–a–Car Corporation*, 470 P.2d at 244 n. 5. It also appeared to the court that, when no evidence is forthcoming, "the fact of the accident and the probabilities are all that remain for the party seeking recovery." The court said that in this instance the

plaintiff can "attempt to negate the user ... and other causes not attributable to the defendant." *Id.* at 244.

This view is not necessarily inconsistent with our cases, and we need only refer to Maryland law to resolve this issue.[6] In *Harrison v. Bill Cairns Pontiac*, 77 Md.App. 41, 549 A.2d 385 (1988), we observed that "[a]n inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." *Id.* at 50, 549 A.2d 385 (citing *Virgil v. "Kash N' Karry" Service Corp.*, 61 Md.App. 23, 32, 484 A.2d 652 (1984), *cert. denied,* 302 Md. 681, 490 A.2d 719 (1985)). Nevertheless, we cautioned that the plaintiff's proof must "arise above surmise, conjecture, or speculation" because the "right to recover may not rest on any presumption from the happening of the accident." *Harrison v. Bill Cairns Pontiac,* 77 Md.App. at 50–51, 549 A.2d 385 (quoting *Jensen v. American Motors Corp.*, 50 Md.App. at 232, 437 A.2d 242). We also pointed out in Harrison five "[f]actors to be considered in determining whether a product defect could be inferred from circumstantial evidence":

> "(1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect."

*Harrison v. Bill Cairns Pontiac,* 77 Md.App. at 51, 549 A.2d 385 (quoting *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822, 827 (1976) (citing W. Prosser, Handbook of the Law of Torts, § 103 at 673–74 (4th ed.1971)), *disapproved on other grounds by REM Coal Co. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989)). And, where the plaintiff's case fails on "one or more of these factors ... then the strength of the inference of a defect weakens and

---

**6.** Certainly, we do not hold that a plaintiff must proffer expert testimony in every strict liability or breach of warranty action. *See Crickenberger v. Hyundai Motor America,* 404 Md. 37, 54–55, 944 A.2d 1136 (2008) (Murphy, J., concurring).

plaintiff risks the entry of summary judgment for defendant." *Shreve v. Sears, Roebuck & Co.,* 166 F.Supp.2d 378, 408–09 (D.Md.2001).

Appellant has not met the first *Harrison* factor. He did not designate an expert on the issue of defect or causation. The second factor cited in *Harrison*—relating to the length of time after the sale—is more neutral. While the accident occurred just over two months after the Tundra was purchased, the truck had already traveled 10,500 miles. With respect to the third factor, whether the same type of accident had occurred in similar products, appellant fails to direct our attention to other mishaps involving the Tundra or other similar Toyota vehicles. While appellant cites to the Safety Recall Notice that was issued subsequent to the accident, we conclude that for reasons that shall be set forth below that notice is inadmissible. This factor can be considered neutral or weighs against appellant. We conclude that the fourth factor should be weighed in favor of appellant. For purposes of reviewing the ruling on summary judgment against appellant, we take as true his version of events on the day of the accident. His testimony eliminates the weather as a factor in this accident. Finally, we conclude that this is not the type of accident that would ordinarily never happen unless a defect existed.

In the final analysis, a single factor weighs in favor of appellant. While two factors can be adjudged "neutral," the two remaining factors favor the defense. Of these two factors, the first, relating to the presence of an expert opinion, is entitled to considerable weight. Appellant did not adduce any expert on the presence, *vel non,* of a defect in the truck.

Although circumstantial evidence has been held sufficient to establish a *prima facie* case in a products liability action, this is not a case where a reasonable juror could find on these facts the existence of either a design or manufacturing defect. This case does not present circumstances that would relieve appellant of the obligation to introduce expert testimony to establish the existence of a defect. In the absence of such evidence,

the jury could only conjecture as to whether the Tundra was defective.

### D. Safety Recall Notice

■ Appellant's brief suggests that the Safety Recall Notice that was issued subsequent to the accident is persuasive circumstantial evidence of a defect in the Tundra's design or manufacture. To recall, Toyota issued this safety notice in August 2005, subsequent to the accident. Appellant asserts that the defect in the Tundra was brought to the attention of Darcars's mechanics, and such alleged defect is "consistent with the steering difficulties referred to in Toyota's Safety Recall Notice."

The circuit court properly determined that this notice would not be admissible. We agree. Maryland Rule 5–407 governs when evidence of subsequent remedial measures may be admitted and provides:

**Rule 5–407. Subsequent remedial measures.**

(a) **In general.** When, after an event, measures are taken which, if in effect at the time of the event, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

(b) **Admissibility for other purposes.** This Rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as (1) impeachment or (2) if controverted, ownership, control, or feasibility of precautionary measures.

The Rule is based on the corresponding Federal Rule, Fed. R.Evid. 407. *See Angelakis v. Teimourian,* 150 Md.App. 507, 520, 822 A.2d 494 (2003).

The "event" referred to in Rule 5–407 means the date of the accident. *See Chase v. General Motors Corp.,* 856 F.2d 17, 21 (4th Cir.1988) (interpreting Fed.R.Evid. 407). The Fourth Circuit in *Chase* also held that Fed.R.Evid. 407 applies to strict liability cases. *Chase v. General Motors Corp.,* 856 F.2d at 22 (citing *Werner v. Upjohn Company, Inc.,* 628 F.2d 848, 857 (4th Cir.1980)). In *Troja v. Black & Decker Manufactur-*

*ing Co.,* 62 Md.App. 101, 488 A.2d 516, *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985), we held that Md. Rule 5–407 likewise applies to strict liability actions. *Troja,* 62 Md.App. at 113–14, 488 A.2d 516 (quoting *Werner,* 628 F.2d. at 857).

Because the recall notice was issued after the "event," the accident in this case, it is inadmissible under the term of Rule 5–407(a). The recall notice came too late for appellant's case. Because the party opposing a motion for summary judgment must produce admissible evidence to show a genuine dispute of material fact, the Safety Recall Notice does not serve that function.

### E. Express Warranty and Negligence

Although appellant's failure to designate an expert witness justifies the entry of summary judgment on all counts as to all of the defendants, the entry of summary judgment on the breach of express warranty against the corporate defendants and the negligence count against Aseer Mohammad can be disposed of summarily. Quite simply the alternative basis of the circuit court's disposition of these counts has not been challenged on appeal. Maryland Rule 8–504(a)(5). *See Beck,* 100 Md.App. at 149, 640 A.2d 236.

**JUDGMENTS AFFIRMED COSTS TO BE PAID BY APPELLANT.**